Grover L. MISKOVSKY, Appellant,

v.

The STATE of Oklahoma ex rel. Honorable Dick JONES, Appellee.

No. M–77–274.

Court of Criminal Appeals of Oklahoma.

Sept. 12, 1978.

Rehearing Denied Dec. 7, 1978.

Don Cooke, Miskovsky, Sullivan & Miskovsky, Oklahoma City, for appellant.

Larry Derryberry, Atty. Gen., Ross N. Lillard, III, Asst. Atty. Gen., for appellee.

## OPINION

CORNISH, Judge:

This appeal stems from a contempt hearing directed by this Court to be held in a manner consistent with *State ex rel. Young v. Woodson*, Okl., 522 P.2d 1035 (1974). This hearing was ordered due to the fact that the appellant had been summarily held in direct contempt of court without the required opportunity to be heard. The contemptuous conduct occurred during the course of a preliminary hearing in the court of the Honorable Byron E. McFall, when the appellant seated his client in the gallery and seated a substitute at the counsel table. On remand, the contempt hearing was assigned to the Honorable Dick Jones, who found the appellant guilty of direct contempt of court, 21 O.S.1971, § 565, and fined him Five Hundred ($500.00) Dollars.

Testimony was presented at the hearing by Judge McFall, the District Attorney who participated in the preliminary hearing, and five attorneys, including the contemner. It was established that Judge McFall had no published rule prohibiting substitution of defendants. Judge McFall testified that he would never allow a substitute to sit at counsel table, although on occasion, and with his permission, defendants had been allowed to remain in the gallery. He said that he felt justice required him to dismiss the case against Virginia Western, but that he nevertheless felt the contemner's conduct had thwarted justice and was a fraud on the court. The five attorneys all testified that they were unaware of any rule of law that prevented substitution of another person for the defendant, and most considered it a valid trial tactic. Mr. Courbois and Mr. Gregg testified that they had substituted other persons for defendants on prior occasions and had not been cited for contempt. Mr. Grove testified that during his tenure with the District Attorney's Office from 1969 to 1970 and under the old justice of the peace system, substituting other persons for defendants at preliminary hearings was a common practice. He further stated that he could not remember a defense attorney ever referring to a substitute as the defendant.

The contemner testified that he had substituted someone for a defendant on one prior occasion. He further stated that he had not referred to the substitute as the defendant in the instant case until after a State's witness had done so,[1] that the sub-

---

1. The initial identification of the substitute as the defendant occurred during the cross-examination of Mr. Ben Thompson, assistant store manager of Dillard's Department Store in Crossroads Mall:

   "Q. [Mr. Miskovsky] All right. Tell me what you did and what you observed.
   "A. Well, I came into the office and Officer Childs was struggling with the young lady and the other one was fighting with him, and we took her off his back, and tried to talk and reason with her.
   "Q. Do you know who that was?
   "A. Yes, the young lady here.
   "Q. This one was doing what?
   "A. One young lady was on the ground, on the floor, and this young lady was on the officer's back.

   "MR. FLAUGHER [ASSISTANT DISTRICT ATTORNEY]: Let the record reflect that the witness is speaking of and about the defendant, Virginia Western, the one individual fighting with the officer.
   THE COURT: Very well. Go ahead.
   "Q. She was?
   "A. She was.
   "Q. And what was she doing, that is the young lady with me?
   "A. Well, she was beating on the officer.
   "Q. All right. And do you know who the other person was?
   "A. I couldn't recall her name.
   "Q. So, you saw this other young lady on the floor, is that correct, and my client here sitting at the table with me, you saw her striking the officer, is that correct?
   "A. Yes.

stitute was his client on another matter and that if the court had called for the defendant he would not have proceeded with his plan.

The Assistant District Attorney testified that he had conducted 4,000 preliminary hearings and that he had never witnessed a substitution of another person for a defendant during any of those hearings.

■ The appellant's first assignment of error is that the evidence was insufficient to support a finding of guilt, in that the judgment was not based upon facts from which a clear deduction of guilt can be established. *Ward v. State*, Okl.Cr., 513 P.2d 350 (1973). The appellant strongly contends that Judge Jones' statements at the close of the contempt hearing concerning his uncertainty as to whether the appellant's actions were contemptuous indicate that the evidence was not clear and convincing as to guilt. After a review of the record, however, we find that there was sufficient evidence upon which to base the judgment. Prior to the close of the hearing, Judge Jones informed the appellant that he would not make a decision at the close of the hearing, but wanted both the appellant and the State to submit briefs discussing the question of contempt. This

> "Q. Are you certain about that?
> "A. Yes, . . . .
>
> &ast; &ast; &ast; &ast; &ast; &ast;
>
> "Q. Okay, I have no further questions. You are sure this is her?
> "A. Yes, sir."

Thus, it appears that the first witness and then the prosecutor identified the substitute as Ms. Western, before Mr. Miskovsky did so.

The second witness, a sales clerk at Dillard's, could only say that the person she saw shoplifting looked "a lot like" the woman seated at the counsel table, whom the prosecutor then called the defendant.

Officer Chester Childs, of the Oklahoma City Police Department, testified that he had a second job as a security officer at Dillard's. He identified the woman at the counsel table as the woman he had arrested for shoplifting, and the prosecutor then noted for the record that the officer had identified "the defendant, Virginia Western." Subsequently on cross-examination, Mr. Miskovsky also referred to the woman as the defendant:

> "A. Then she jumped up and started screaming.
> "Q. Who did?

request does not indicate that the trial court was unclear as to the facts of the case, but rather that he wanted to be certain about the law to be applied to those facts. This assignment of error is without merit.

■ In his second assignment of error, the appellant argues that the acts committed did not constitute direct contempt. Title 21 O.S.1971, § 565, defines direct contempt as follows:

"Contempts of court shall be divided into direct and indirect contempts. Direct contempts shall consist of disorderly or insolent behavior committed during the session of the court and in its immediate view, and presence, and of the unlawful and wilful refusal of any person to be sworn as a witness, and the refusal to answer any legal or proper question; and any breach of the peace, noise or disturbance, so near to it as to interrupt its proceedings, shall be deemed direct contempt of court, and may be summarily punished as hereinafter provided for. Indirect contempts of court shall consist of wilful disobedience of any process or order lawfully issued or made by court; resistance wilfully offered by any person to the execution of a lawful order or process of a court."

> "A. Virginia Western.
> "Q. This lady right here?
> "A. That is right.
> "Q. Are you certain about that?
> "A. I am certain.
> "Q. You are positive that this is the one?
> "MR. FLAUGHER: Objection, don't say a word. This is argumentative. He has asked this many times.
>
> &ast; &ast; &ast; &ast; &ast; &ast;
>
> "Q. All right. Now, you have got Virginia Western, . . . .
>
> &ast; &ast; &ast; &ast; &ast; &ast;
>
> "Q. You had this girl here sitting with me, in there, and you subdued her, is that correct, Officer?

After the deception was revealed, the defendant was seated at the counsel table with the substitute. Officer Childs was recalled and again asked to identify the person whom he had arrested. He unhesitatingly chose the substitute. The trial court asked him if he had ever seen the other woman at the table, that is, the actual defendant, and the officer replied that he could not be certain.

The appellant's conduct consisted of knowingly implementing a plan of deception which would affect the witnesses, the District Attorney, and the court. He insists that he never referred to the substitute as Virginia Western, and that those in the courtroom mistakenly assumed that she was the defendant. The point is, however, that the appellant's actions were *designed* to create that mistaken assumption. His actions indicated a disrespectful attitude for the judicial process, in that he felt it necessary to resort to deception and misrepresentation to protect his client's interests. It is our opinion that the appellant's behavior constitutes "conduct that is directed against the dignity and authority of the court . . . obstructive of the administration of justice and disrespectful of the majesty of the state." See *Roselle v. State*, Okl.Cr., 503 P.2d 1293 (1972); *Smith v. State ex rel. Raburn*, Okl.Cr., 536 P.2d 976 (1975).

We emphasize that the contemptuous conduct in this case was not merely the substitution of another person for a defendant. In his third assignment of error, the appellant claims that such substitution is a well-recognized and much-used tactic in Oklahoma County; and this may well be true. However, the appellant does not claim that it is common practice to switch persons *without the knowledge of the court*. And this, in our opinion, is the source of the contempt finding. At the contempt hearing, Judge McFall testified that he would on occasion allow a defendant to be seated in the back of the courtroom. But the appellant did not seek the judge's permission before indulging in his little deception. We find no fault in an attorney wanting to insure a true test of a witness' identification. Nevertheless, the attorney must inform the court of his or her intentions.

■ In his fourth assignment of error the appellant contends that it is the responsibility of the trial court to make certain that the defendant is present and that it was therefore the court's own mistake that led to the contempt charge. The appellant relies on the following language from *Jones v. State*, Okl.Cr., 507 P.2d 1267 (1973):

". . . It would appear that since the responsibility for defendant's presence is upon the court, it is within the Court's discretion as to how best to implement this statute. . . ."

In *Jones*, we upheld the order of the trial court that the defendants had to be seated at the counsel table. A reading of *Branham v. State*, Okl.Cr., 480 P.2d 281 (1971), makes clear that the responsibility of the trial court to insure a defendant's presence relates to the defendant's right to be present during every phase of the trial, rather than to any duty on the part of the trial court to make certain that it is not being deceived. We do not believe that the trial court's responsibility extends to determining whether defense counsel is attempting an unauthorized test of a witness' ability to identify the defendant. As with many other aspects of the conduct of a trial, tests such as the one made in the instant case may be made at the discretion of the trial court.

In the practice of law an attorney is governed by certain ethical standards. The Professional Code of Responsibility, as adopted in 5 O.S.1971, Ch. 1, App. 3, Disciplinary Rules 1–102, says:

"(A) A lawyer shall not:

\* \* \* \* \* \*

"(4) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.

"(5) Engage in conduct that is prejudicial to the administration of justice."

Also, 5 O.S.1971, § 3, which specifies the duties and obligations of an attorney, states:

"Third. To employ for the purpose of maintaining the causes confided to him such means only as are consistent with truth, and never to seek to mislead the judges by any artifice or false statements of facts or law."

Finally, the oath administered when an attorney is admitted to the Bar states in part, "that you will do no falsehood or consent that any be done in court, and if you know of any you will give knowledge thereof to the judges of the court, or someone of them, that it may be reformed; . . ."

*State v. Massad*, Okl., 334 P.2d 787 (1958), involved an appeal of disbarment proceedings to the Oklahoma Supreme Court. In that case, the defense counsel pled a substitute defendant guilty to a charge of being drunk in a public place. The Court there stated:

". . . but we are convinced from the evidence that respondent caused a phony defendant, Clarence Warren, to appear for the real defendant, Jones. Such conduct was deceitful and clearly amounted to a fraud upon the court which constitutes unethical conduct."

We believe that these standards justify a court's reliance upon the defense counsel to refrain from the type of misrepresentation perpetrated by the contemner at the preliminary hearing. Accordingly, this assignment of error is found to be without merit.

As his final assignment of error, the appellant asserts that the actions of Judge Jones at the contempt hearing indicated his prejudice against the appellant and that, therefore, the appellant was denied a fair trial as required by Art. II, § 6, of the Constitution of the State of Oklahoma. In support of his assignment of error, the appellant contends that the court unilaterally introduced the preliminary hearing transcript into evidence, questioned witnesses in a prosecutorial manner, questioned witnesses as to their knowledge of an unpublished District Court memorandum and, finally, that counsel for the appellant was continually interrupted while trying to make his record.

■ We believe that it was proper for the court to introduce the transcript because it allowed the court to perceive the contemptuous behavior in the context in which it occurred. The transcript also served as a check on the memories of the witnesses. As to the alleged prosecutorial questioning, we have examined the transcript of the contempt hearing and we find that none of the instances cited by the appellant, when read in context, are exactly what the appellant claimed them to be. The court did question the witnesses but this may have been partly because the ap-

pellant contended that the District Attorney was not a proper party to the case. The trial court was the trier of fact, and the questions which he interjected were plainly intended to clarify the matters at issue.

■ The appellant next complains of reference by Judge Jones to a memorandum circulated by the Presiding Judge of the District Court of Oklahoma County in 1972. The memorandum stated that a defendant "is not privileged to conceal himself and may be compelled to exhibit his person for identification." The appellant argues that the trial court indicated his prejudice in that he regarded this memorandum as a binding rule. The record, however, does not support the appellant's argument. In his defense at the contempt hearing, the appellant insisted that the switching of parties was a valid trial tactic. In response to this, the trial court took notice of the memorandum as expressing the opinion of the presiding judge on the issue. The court, nevertheless, stated that it would not impute knowledge of the memorandum to the attorneys practicing in the District Court.

■ Finally, with regard to this fifth assignment of error, the appellant asserts that prejudice was shown by the fact that "on numerous occasions [the court] interrupted this writer in his attempt to make a record, thereby actively interfering with the representation of this writer's client." Here again, the claim is not supported by the record of the hearing. At the outset the appellant's attorney contended that neither the trial court nor the District Attorney should be allowed to question the witnesses. After his objection was overruled, the appellant's attorney objected—and made a lengthy record of his objection—to almost every question asked either by the court or by the District Attorney. There were instances in which the court and the appellant's attorney were each interrupting the other. We cannot agree that these interruptions established prejudice against the appellant or prevented him from making a more than adequate record. Art. II, § 25, of the State Constitution requires that ". . . In no case shall a penalty or

punishment be imposed for contempt, until an opportunity to be heard is given." As the record reflects, the appellant was given a substantial opportunity to be heard, and we can find no manifestation of prejudice that would require reversal.

■ In closing, we feel that we should mention the District Attorney's conduct prior to Ms. Western's preliminary hearing. We do not believe an out-of-court attempt to reinforce a witness' identification in the manner which allegedly precipitated the contemptuous conduct is proper, and attorneys should refrain from conduct of this nature. It must also be noted that this opinion should not prevent defense counsel from testing the ability of a witness to identify a defendant when a true question of identity is presented. We do believe that when circumstances warrant it, and the court's permission is obtained, a test of identity should be allowed. Such a test should be conducted in a controlled situation that is prejudicial neither to the defendant nor to the State.

■ Although not raised on appeal, we deem the Five Hundred ($500.00) Dollar fine imposed by the District Court to be excessive under the facts and circumstances of the instant case and hold that the fine should be modified to One Hundred ($100.00) Dollars. Finding no reversible error, the order of the District Court, adjudging the appellant to be in direct contempt, is *AFFIRMED* as *MODIFIED*.

BUSSEY, P. J., and BRETT, J., concur.