Charles B. **CHADWELL,** Appellee,

v.

**J.C. KENNEDY,** Appellant.

No. 59,722.

Court of Appeals of Oklahoma,
Division No. 2.

April 9, 1985.

Rehearing Denied June 12, 1985.

Certiorari Denied Sept. 10, 1986.

Sam H. Johnson, Rhoads & Johnson, Lawton, for appellee.

Ralph W. Newcombe, Newcombe & Redman, Inc., Lawton, for appellant.

MEANS, Judge.

Defendant appeals from a decision of the trial court finding him in direct contempt of court for failing to obey a court order. Having reviewed the record and applicable law, we affirm.

This cause of action arose during a lengthy dispute concerning stock in the Security Bank and Trust Company of Lawton, Oklahoma. The litigation began in July 1978, when Charles Chadwell sought to enforce a purchase option for the stock which at the time was owned by Exall and Lucile English. After the lawsuit had been filed but before trial, Mr. and Mrs. English transferred all their rights in the stock to the English Grandchildren's Trust. Mr. and Mrs. English named ten individuals as co-trustees, one of whom was defendant J.C. Kennedy.

Upon learning of the transfer, Chadwell amended his petition and sought to add all the co-trustees as defendants. The co-trustees were added as defendants and eight of them were served. It is undisputed that J.C. Kennedy was never served in the original proceeding. In November 1979, Kennedy entered a special appearance, objecting to venue, personal jurisdiction, and subject matter jurisdiction. This motion was overruled in January 1980, and Kennedy filed no other pleadings in this action.

In the spring of 1980, the case went to trial, resulting in a decision in favor of Chadwell. That decision was appealed and on appeal was affirmed by the Oklahoma Court of Appeals, Division 2. *Chadwell v. English*, 652 P.2d 310 (Okla.Ct.App.1982). Subsequently, Chadwell entered a motion to compel specific performance to force the co-trustees to transfer the stock.

At the hearing on Chadwell's motion, Kennedy appeared pursuant to subpoena and testified that he was fully aware of the litigation over the stock ownership at the time the stock was transferred to the trust. He further testified that he claimed no rights to the stock. He refused to comply with the court's order, made and entered in his presence, to execute as a co-trustee the assignment of stock.

Kennedy appeared in court on December 28, 1982, January 11, 1983, January 12, 1983, and January 19, 1983, and each time refused to sign as co-trustee the assignment of stock in order to transfer the stock to Chadwell. On January 19, 1983, the trial court held Kennedy in direct contempt and sentenced him to thirty days in jail.

Kennedy has appealed the contempt asserting that the court had no power to hold him in contempt because he had never been served in the original proceeding. He then contends that if any contempt at all was proper that indirect and not direct contempt was appropriate. He does not contest the equitable power of the court to compel a trustee to transfer the stock. He asserts that the court erred in conducting further proceedings while an application to disqualify the judge was pending.

I

■ There is no question that the court had jurisdiction over the subject matter when Chadwell filed his original petition. At that time the stock was held by Mr. and Mrs. English. There is also no question that the trustees themselves knew that the stock was involved in litigation before it was transferred to the trust. Title 12 O.S. 1981 §§ 180 and 235, provide that the court retains jurisdiction over property if that property is transferred during litigation.

Thus, once the jurisdiction attached, the court retained subject matter jurisdiction through the entire case.

■ Oklahoma law provides that a trust may be sued by service upon "any one of such individuals as may be designated as trustee for said trust, the same as in any other civil action." 12 O.S.1981 § 182. As noted earlier, Chadwell served eight of the ten trustees in the original action. There is no question that the court had jurisdiction over the trust. Thus the court had the power to determine ownership of the stock and to determine the interest of any transferee. As Kennedy was an admitted lis pendens transferee, he was subject as a co-trustee to the court's jurisdiction.

## II

Even if Kennedy were not subject to the court's jurisdiction in the proceedings concerning the stock, he was present in the courtroom during the contempt proceedings. Kennedy contends that if he was guilty of contempt at all, he was guilty of indirect, not direct contempt. We find this argument without merit. Kennedy admits that he did, in the presence of the judge in open court, refuse to obey an order of the court made and entered in his presence. At three different successive hearings, Kennedy refused to comply with the court's order. The trial court granted Kennedy three separate continuances to allow him time to show cause why he should not be held in contempt for refusal to obey a court order. All of these proceedings were in the direct presence of the court.

The power of the courts to punish for contempt is derived from Okla.Const. art. 2, § 25, which provides:

The legislature shall pass laws defining contempts and regulating the proceedings and punishment in matters of contempt: Provided, that any person accused of violating or disobeying, when not in the presence or hearing of the court, or judge sitting as such, any order of injunction, or restraint, made or entered by any court or judge of the State shall, before penalty or punishment is imposed, be entitled to a trial by jury as to the guilt or innocence of the accused. In no case shall a penalty or punishment be imposed for contempt, until an opportunity to be heard is given.

It is clear that any person who wilfully violates an order of the court may be punished for contempt. Title 21 O.S.1981 § 565, states: "Direct contempt shall consist of disorderly or insolvent behavior committed during the session of the court and in its immediate view, and presence ... and may be summarily punished as hereinafter provided for."

In *Brunson v. State*, 8 Okla.Crim. 665, 129 P. 1110 (1913), the court upheld the power of the courts to punish for contempt when the defendants had violated the terms of an injunction. In *Burnett v. State*, 8 Okla.Crim. 639, 654–55, 129 P. 1110, 1117–18 (1913) (emphasis added) (citations omitted), the court noted:

The power to punish contempts is inherent in all courts of justice, and is expressly conferred upon them by the Constitution.... Its existence is essential to the preservation of order in judicial proceedings, and *to the enforcement of the judgments, orders and decrees of the court*, and consequently to the due administration of justice; and upon its proper and prudent exercise depend the respect and dignity and efficiency of our courts of justice. It has been well said that "the exercise of this power has a twofold aspect, namely: First, the proper punishment of the guilty party for his disrespect to the court or its orders; and second, to compel his performance of some act or duty required of him by the court, which he refuses to perform."

The *Burnett* court upheld the lower court's findings that bank officers who had refused to turn over documents in defiance of a court order were in contempt. The court concluded that "defendants must realize

that the law is not so lame, helpless, and impotent that craft, intrigue, and subterfuge, or bold defiance, can defeat the due administration of justice." *Id.* at 664, 129 P. at 1122.

In *Miskovsky v. State,* 586 P.2d 1104 (Okla.Crim.App.1978), the court upheld a finding of direct contempt where the defendant misrepresented the identity of a witness in the courtroom. The court found that the defendant's actions "indicated a disrespectful attitude for the judicial process," constituting " 'conduct that is directed against the dignity and authority of the court ... obstructive of the administration of justice and disrespectful of the majesty of the state.' " *Id.* at 1108.

In support of his assertion that his contempt was indirect, Kennedy cites *Pierce v. Stroud,* 473 P.2d 325 (Okla.Crim.App.1970); *Kelley v. Kelley,* 206 Okla. 188, 242 P.2d 439 (1952); and *Flathers v. State,* 7 Okla. Crim. 668, 125 P. 902 (1912). These three cases are clearly distinguishable from the facts in the instant case, for they were concerned with disobedience of a court order outside the presence of the court. Kennedy has cited no cases which would show this court that direct contempt is inappropriate for wilfull disobedience of a valid court order which occurs within the presence of the court.

■■■ As provided in the statute and cases construing its provisions, Kennedy's presence in the courtroom gave the court the power to find him in contempt. It is clear that open defiance of a court order, done in the presence of the court, falls within the classification of direct contempt. Kennedy's actions showed a lack of respect for the court and its power. As the *Burnett* court stated, without the power to punish for contempt, " 'courts might as well break and cast away the scepter of justice if derelicts may thus trifle with their authority.' " 8 Okla.Crim. at 664, 129 P. at 1122. In the instant case, the trial court had given Kennedy every opportunity to comply with the order to assign the stock. Kennedy's continued refusal to comply with the order gave the court no alternative but to use its contempt powers in order to carry out that order.

### III

■■ Finally, Kennedy contends that it was inappropriate for the court to continue any proceedings while motions to disqualify the judge were pending. We find this argument without merit. Initially, we note that at no time did Kennedy seek to disqualify the trial judge. We further note that the motion entered by other defendants to disqualify the judge did not comply with the statutory requirement of 20 O.S. 1981 § 1403. Finally, there is no evidence before this court to show that the trial judge was so integrated with the contempt that he could not objectively render his decision. *See Paxton v. Pappe,* 561 P.2d 57 (Okla.1976); *State ex rel. Young v. Woodson,* 522 P.2d 1035 (Okla.1974). At the time of Kennedy's contempt the trial judge was merely performing the ministerial tasks of enforcing a judgment. The merits of the case had been thoroughly litigated and the decision upheld by the appellate court.

The decision of the trial court is in all respects affirmed.

REIF, P.J., and STUBBLEFIELD, J. (sitting by designation) concur.