(No. 74843.—

# THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. CHRISTOPHER SIMAC (David Sotomayor, Contemnor-Appellant).

*Opinion filed June 16, 1994.—Rehearing denied October 3, 1994.*

NICKELS, J., joined by HARRISON and McMORROW, JJ., dissenting.

M. Jacqueline Walther, of Kielian & Walther, of Chicago, George P. Lynch, of Downers Grove, and David Sotomayor, of Sotomayor & Bird, P.C., of Wheaton, for appellant.

Roland W. Burris, Attorney General, of Springfield (Rosalyn B. Kaplan, Solicitor General, and Terence M. Madsen, Assistant Attorney General, of Chicago, of counsel), for the People.

James Geis, of Chicago, and Burton H. Shostak, of St. Louis, Missouri, for *amicus curiae* National Association of Criminal Defense Lawyers.

CHIEF JUSTICE BILANDIC delivered the opinion of the court:

The sole issue in this appeal is whether appellant, David Sotomayor, an attorney licensed to practice law in this State, was properly found in direct criminal contempt of court. During a traffic proceeding in Du Page County, appellant substituted an individual other than defendant at counsel's table, without the court's permission or knowledge. The trial judge found that such conduct constituted direct criminal contempt,

and fined appellant $500. The appellate court, with one justice dissenting, affirmed the finding of direct criminal contempt, but reduced the fine to $100. (236 Ill. App. 3d 1096.) We granted appellant's petition for leave to appeal (134 Ill. 2d R. 315(a)). We allowed the National Association of Criminal Defense Lawyers to submit a brief as *amicus curiae* on appellant's behalf.

The incident that gave rise to the contempt citation occurred during appellant's representation of defendant, Christopher Simac, for charges that arose from a car accident on March 20, 1990. Defendant was charged with driving with a revoked license and failure to yield while making a left-hand turn. After several delays, the case was called for trial on December 11, 1990. The State's only witness was Officer Ronald H. LaMorte. The complaining witness, Beth Nelson, never appeared at the trial.

Before trial, appellant seated David P. Armanentos, a clerical worker employed at his law firm, next to him at counsel's table. Defendant was seated at another location in the courtroom. Armanentos and defendant shared similar physical characteristics, in that they were both tall, thin, dark blond-haired men who wore eyeglasses. On the date of trial, Armanentos wore a white shirt with blue stripes, while defendant was dressed in a white shirt with red stripes.

Appellant did not ask the court's permission, or notify the court that he had substituted Armanentos in the customary place for a defendant at counsel's table. The State's Attorney also was not notified of the substitution. The court ordered all witnesses who were going to testify to come forth and be sworn. The clerk asked appellant, "Is your defendant [going to be sworn]?" Appellant replied, "No."

In the State's case in chief, Officer LaMorte testified regarding the automobile accident that he investigated

on March 20, 1990, which resulted in injuries to a woman and her young child. He described the intersection where the accident occurred and the position of the cars. LaMorte testified that he asked defendant for identification; however, he believed that defendant was unable to produce his driver's license.

LaMorte identified Armanentos, who was seated next to appellant at counsel's table, as the person who was involved in the accident. The court noted LaMorte's identification of Armanentos as the defendant for the record. Appellant did not inform the court of the misidentification at this time or reveal that defendant was seated elsewhere in the courtroom.

After the State rested its case in chief, appellant made a motion to exclude witnesses. The motion was granted, and LaMorte left the courtroom. Appellant then called Armanentos, the person whom LaMorte previously identified, as a witness. Armanentos was sworn at this time, as he did not come forward to be sworn when the court called for witnesses at the beginning of the trial. When Armanentos stated his name for the record, the court received the first indication that a misidentification had occurred.

On direct examination, Armanentos testified that he was not driving a motor vehicle at the intersection in question on March 20, 1990. The defense then rested. Under cross-examination, Armanentos testified that he had never met defendant. He stated that he temporarily worked as a clerical employee in the appellant's law firm. It was his understanding that he was brought to court by appellant and instructed to sit at counsel's table to see whether the testifying officer would identify him as the defendant. Armanentos testified that he was told that he resembled defendant. He further admitted that he looked similar to defendant, as they were both tall, thin, and Caucasian. In response to the court's inquiry,

Armanentos admitted that he did not approach the clerk to be sworn in as a witness before the commencement of the trial.

Appellant stated for the record that Armanentos never approached the bench. He was not sworn in, and was seated in the corner of the courtroom until appellant directed him to sit in the chair next to him. Appellant argued that no fraud was perpetrated on the court, for defendant was in open court as required. He asked that a directed finding of not guilty be entered in the traffic case based on the misidentification.

After appellant said that he did not intend to call any further witnesses, the State called defendant to testify. After taking the stand and stating his name for the record, defendant invoked his fifth amendment privilege and was excused. The court refused the State's request to call appellant as a witness. The State then asked that defendant take his position next to his attorney. The court replied: "[H]e can sit any place he wants to in the courtroom. He is here." Over appellant's objection, the court allowed the State to recall LaMorte. LaMorte again misidentified Armanentos as the defendant. The court granted appellant's request for a directed finding of not guilty based upon the misidentification. In addition, the court entered an order for contempt of court against the appellant for placing the witness in such a manner as to mislead the State's Attorney and the arresting officer. The court stated that the person seated next to appellant did not look like co-counsel or anyone employed in an attorney's office. The court stated that appellant had seated Armanentos next to him to purposely mislead the court. The order prepared by the court stated that "defense attorney is held in direct contempt of court for having a person bearing the likeness of [defendant] sit at the counsel table with him in the location usually occupied by defendant." The

court imposed a $500 fine on appellant for direct criminal contempt.

The next day, the court made the following supplemental findings concerning this episode:

"The court finds that it was the totality of the conduct of [defense] attorney in court in connection with this case that is the basis for the court['s] finding of criminal contempt for misrepresentation by inference including the following findings:

1. That a person with the likeness of the defendant, a young, white male, was the only person with defense attorney at the counsel table when defense attorney came to the bench and said, 'Here is my jury waiver.'

2. That person was dressed in jeans and a shirt with no tie that is not the courtroom attire of an attorney or co-counsel, yet that person sat in the customary location of a defendant throughout the State's case.

3. That person was asked by the clerk to be sworn with other witnesses at the start of the trial, to which defense attorney said that said person was not going to testify. The obvious inference of this comment to the court and clerk was that the person was the defendant because witnesses were excluded except for defendant.

4. That person was identified as the defendant by the State witness police officer, and all of the foregoing resulted in the court's comment that the record could show that the defendant was identified for the record; there was no defense attorney response to this court's comment that advised of the court's impression and finding based on all that had occurred and that the court was misled as to the identity of the defendant.

5. That person's only apparent purpose in the courtroom, in a defendant's customary location with defense attorney, was to create an inference to the court that he was the defendant, and this was done with the knowledge of defense attorney.

6. That while there was no express misrepre-

sentation by words, there was a misrepresentation by inference by the totality of the conduct of the defense attorney, and that was the basis of the criminal contempt of court finding."

On the same day that these supplemental findings were filed, appellant presented a motion to reconsider the order holding him in direct criminal contempt. In support of the motion, appellant stated that defendant was seated in the courtroom at the commencement of the trial. Appellant also stated that he made no representation to the court or State's Attorney concerning the identity of the person sitting next to him. Armanentos never approached the bench, nor did he take any affirmative action to falsely represent his identity. The motion to reconsider also described the six persons seated in the courtroom at the time of the misidentification. Appellant argued that his conduct did not embarrass, hinder or obstruct the court. He noted that the State was afforded every opportunity for the police officer to make an identification. The motion for reconsideration was denied. Appellant appealed the conviction of direct criminal contempt.

On appeal, a divided appellate court affirmed the judgment of direct criminal contempt, but reduced the fine from $500 to $100. (236 Ill. App. 3d at 1106.) Before the appellate court, appellant argued that the evidence was insufficient to support a finding of contempt. According to appellant, the grounds stated in the order of contempt were conclusory and unsupported by the record. The appellate court rejected appellant's argument, finding that the placement of someone other than defendant at counsel's table without the court's prior knowledge or permission constituted contemptuous conduct. However, because there was no guidance under existing law, the appellate court reduced the fine pursuant to Supreme Court Rule 615(b)(4) (134 Ill. 2d R. 615(b)(4)).

The dissenting justice acknowledged the need to protect a defendant from tainted in-court identification. He found no intent to embarrass, hinder, derogate, or obstruct the court from appellant's good-faith attempt to protect his client from such identification. Accordingly, the dissenting judge would have reversed the trial court's finding of direct criminal contempt. 236 Ill. App. 3d at 1107 (Geiger, J., dissenting).

Before this court, appellant argues that his conduct of placing a substitute at counsel's table is not contemptuous. Appellant contends that the appellate court's holding violates both principles of direct criminal contempt as well as principles of professional responsibility. First, appellant argues that the appellate court improperly eliminated from the offense of direct criminal contempt the element of intent to embarrass, hinder, derogate or obstruct the court. Second, appellant contends that requiring him to disclose to the court or opposing counsel his strategy of substitution to test the State's identification testimony would be in conflict with his responsibilities under the Code of Professional Responsibility. We will address each of appellant's arguments separately.

## ANALYSIS

It is well established law that all courts have the inherent power to punish contempt; such power is essential to the maintenance of their authority and the administration of judicial powers. (*People v. Loughran* (1954), 2 Ill. 2d 258, 262.) This court has defined criminal contempt of court " 'as conduct which is calculated to embarrass, hinder or obstruct a court in its administration of justice or derogate from its authority or dignity, thereby bringing the administration of law into disrepute.' " (*People v. L.A.S.* (1986), 111 Ill. 2d 539, 543, quoting *People v. Javaras* (1972), 51 Ill. 2d 296, 299; *People v. Siegel* (1983), 94 Ill. 2d 167, 171.) A finding of

criminal contempt is punitive in nature and is intended to vindicate the dignity and authority of the court. (*People ex rel. Chicago Bar Association v. Barasch* (1961), 21 Ill. 2d 407, 409.) However, the exercise of such power is "a delicate one, and care is needed to avoid arbitrary or oppressive conclusions." *Cooke v. United States* (1925), 267 U.S. 517, 539, 69 L. Ed. 767, 775, 45 S. Ct. 390, 396.

Direct criminal contempt is contemptuous conduct occurring "in the very presence of the judge, making all of the elements of the offense matters within his own personal knowledge." (*People v. Harrison* (1949), 403 Ill. 320, 323-24.) Direct contempt is "strictly restricted to acts and facts seen and known by the court, and no matter resting upon opinions, conclusions, presumptions or inferences should be considered." (*Loughran*, 2 Ill. 2d at 263.) Direct criminal contempt may be found and punished summarily because all elements are before the court and, therefore, come within its own immediate knowledge. (*Javaras*, 51 Ill. 2d at 299; *Loughran*, 2 Ill. 2d at 263.) On appeal, the standard of review for direct criminal contempt is whether there is sufficient evidence to support the finding of contempt and whether the judge considered facts outside of the judge's personal knowledge. *People v. Graves* (1979), 74 Ill. 2d 279, 284.

## I. Intent

In contending that the appellate court's holding violates principles of direct criminal contempt, appellant argues that the intent necessary to support a conviction of direct criminal contempt was not within the circuit court's personal knowledge and, therefore, his conviction must be overturned. In this regard, appellant argues that he has an ethical obligation to vigorously represent his client. Appellant asserts that, by placing a substitute at counsel's table, he merely intended in good faith to fulfill his ethical duties of zealous advocacy by testing the veracity of the State's identification testimony.

Appellant argues that he was operating in unchartered waters, and that his intent was to facilitate rather than impede the administration of justice by preventing the conviction of a potentially innocent defendant based on a tainted in-court identification. He asserts that there was no evidence known to the court to establish an intent to obstruct the administration of justice or to derogate from the court's dignity or authority. Therefore, appellant asserts that, by its holding, the appellate court has improperly eliminated from the offense of direct criminal contempt the intent to embarrass, hinder, derogate, or obstruct the court.

Before citing one with contempt, a court must find that the alleged contemnor's conduct was willful. (*People v. Ernest* (1990), 141 Ill. 2d 412, 424.) The alleged contemnor's state of mind, however, does not have to be affirmatively proven; the contemptuous state of mind may be inferred from the allegedly contemptuous conduct itself. (*People ex rel. Kunce v. Hogan* (1977), 67 Ill. 2d 55, 60, 61.) The intent may be inferred from the surrounding circumstances and the character of the party's conduct. (*Ernest*, 141 Ill. 2d at 424; *Hogan*, 67 Ill. 2d at 61.) In this regard, this court has stated:

> " 'Granting that defendants in error apparently thought, as there is some reason to believe, that they were warranted in their action ***, it does not follow that they were not guilty of contempt. Whether a direct contempt has been committed depends upon the act and not upon the alleged intention of the offending party.' " *Hogan*, 67 Ill. 2d at 61, quoting *Anderson v. Macek* (1932), 350 Ill. 135, 137-38.

See *Kneisel v. Ursus Motor Co.* (1925), 316 Ill. 336, 342 (same).

To the same effect, this court has stated:

> "If the acts of a person charged with contempt of court are inconsistent with his alleged intention, and if the acts charged and proved or not denied amount to a contempt, the answer alleging the party charged intended no contempt will not purge him. (*People v. Severinghaus*, 313

Ill. 456; *People v. Seymour*, 272 Id. 295.) An attorney's zeal to serve his client should never be carried to the extent of causing him to seek to accomplish his purpose by a disregard of the authority of the court or by seeking to secure from a court an order or judgment without a full and frank disclosure of all matters and facts which the court ought to know." *People ex rel. Fahey v. Burr* (1925), 316 Ill. 166, 182.

In light of the aforementioned principles, we reject appellant's argument. We find that appellant's conduct clearly reveals that his intent was not merely to test the State's identification testimony. Rather, we find that appellant intended to cause a misidentification, thereby misleading not only the State and its witness but also the court itself. Appellant commissioned a clerical employee from his office to sit with him at the defendant's customary place at counsel's table. Appellant's employee resembled the defendant in important identification characteristics. Moreover, both the substitute and the defendant wore glasses and were similarly dressed. Under these circumstances, we find that appellant calculated to cause a misidentification.

Additionally, appellant's conduct before the court indicates appellant's intent to create a misapprehension and thereby cause a misidentification. It is evident to us that appellant's conduct was intended to deceive. For instance, appellant responded in the negative to the clerk's direct inquiry as to whether his defendant would be sworn. Appellant responded negatively even though, at the same time, he obviously anticipated that the substitute would eventually testify as a witness concerning the misidentification. Clearly, appellant was aware that the only inference the court could draw from the totality of these circumstances was that the person sitting next to appellant at counsel's table was the defendant and that the defendant was not going to testify at trial.

Most revealing of appellant's intent to deceive, however, was appellant's failure to correct the court and the record upon the court's erroneous statement for the record that the witness had identified the defendant. At this point, as an officer of the court, appellant had a responsibility to the court and the integrity of the proceedings to correct the court and the record. When the court made the erroneous statement for the record, appellant clearly knew that the court was laboring under a misconception as to the identity of the defendant, yet he took no action to correct the court's mistaken impression. If appellant had not calculated to cause such a misconception, he would have taken some action to clarify the defendant's identity.

As this court has stated, "An attorney's zeal to serve his client should never be carried to the extent of *** seeking to secure from a court an order or judgment without a full and frank disclosure of all matters and facts which the court ought to know." (*Burr*, 316 Ill. at 182.) The true identity of the defendant is clearly a fact "which the court ought to know" because it is the responsibility of the court to ensure the defendant's right to be present at all stages of the proceedings against him. Therefore, an attorney must not deceive the court as to the defendant's identity despite the attorney's obligation to vigorously represent his client. Such a deception prevents the court from fulfilling its obligation and derogates from the court's dignity and authority.

Furthermore, we reject appellant's claim that he merely intended in good faith to test the veracity of the State's identification testimony. Appellant could have easily achieved this purpose without resorting to deceptive and misleading practices. Many alternative methods are available to an attorney to test identification testimony. These available alternatives include

conducting an in-court lineup, having defendant sit in the gallery without placing a substitute at counsel's table, or placing more than one person at counsel's table. It is readily apparent, therefore, that appellant could have achieved his goal as an advocate without misleading or deceiving the court, the State, and the witness and thereby remained within the bounds of his responsibilities as an officer of the court.

For the foregoing reasons, we conclude that there is sufficient evidence in the record to support appellant's conviction for direct criminal contempt. Appellant's actions derogated from the court's dignity and authority by causing the court to erroneously find for the record that the witness had identified the defendant, and his conduct delayed the proceedings. In view of appellant's actions and the surrounding circumstances, we find that appellant's conduct was calculated to and actually did embarrass, hinder, and obstruct the court and the proceedings.

## II. Professional Responsibility

Appellant raises an additional argument that we will briefly address. Before us, appellant argues that requiring a defense attorney to give the court prior notice and obtain its permission before placing a substitute at counsel's table would violate principles of professional responsibility. Appellant contends that, in a bench trial such as this where the court also functions as the trier of fact, prior disclosure to the court of his concern regarding an identification issue would somehow influence the court's ability to render a just verdict based solely on evidence presented during the proceedings. Additionally, appellant argues that, since he cannot engage in *ex parte* communications with the court, he would also have to reveal his concern and strategy to the prosecution in violation of ethical obligations. Further, appellant contends that the prosecutor would then

be placed in the ethical dilemma of deciding whether to inform the State's identification witness what to expect, or to seek a just result by refraining from influencing the identification witness' testimony.

We reject appellant's arguments. It is well established that, in a bench trial, the court is presumed to consider only competent evidence in making a finding. (*People v. Tye* (1990), 141 Ill. 2d 1, 26.) In order to overcome this presumption, the record must affirmatively demonstrate that the court's finding rests on a private investigation of the evidence or other private knowledge about the facts in the case. (*Tye*, 141 Ill. 2d at 26.) Furthermore, the court and prosecution are frequently made aware of defense concerns and potential strategies in situations involving motions *in limine*. Such pretrial motions occur on a daily basis. Defense attorneys who utilize this pretrial procedure do not violate their ethical obligations to their clients. Nor has the State ever indicated that such motion practice places it in an ethical dilemma. Many times in cases where the defense attorney's motion *in limine* has been granted, the prosecution is aware of evidence which it cannot use or allude to at trial. Nevertheless, the prosecution has been able to proceed with its function without violating its professional responsibilities. We find the practice of giving the court prior notice and obtaining its permission to place a substitute at counsel's table to be analogous to the filing and arguing of motions *in limine*. Therefore, we dismiss appellant's argument.

Before closing, we note that our determination in this case is supported by cases decided in other jurisdictions. These decisions have refused to allow the practice of placing a substitute at counsel's table without notifying the court of the attorney's intent to do so. For instance, in *United States v. Thoreen* (9th Cir. 1981), 653 F.2d 1332, an attorney representing a defendant accused

of violating a preliminary injunction against salmon fishing decided to test the witness' identification by placing at counsel's table another person who resembled the defendant. The substitute was dressed in outdoor clothing, while the defendant was dressed in a business suit and sat behind the rail in a row normally reserved for the press. Defense counsel neither notified the prosecutor nor asked the court's permission to arrange this substitution. On defense counsel's motion at the start of the trial, the court ordered all witnesses excluded from the courtroom. However, the substitute remained seated next to defense counsel. Throughout the trial, defense counsel did not correct any mistaken representation of the court when it expressly referred to the substitute as the defendant for the record. Two government witnesses misidentified the substitute as the defendant. Following the prosecutor's case in chief, defense counsel called the substitute as a witness and disclosed the substitution. The prosecutor was allowed to reopen his case. Defendant was identified by an agent who had cited him for two of the violations, and was ultimately convicted.

Based upon defense counsel's substitution of another individual for defendant at counsel's table, the district court found him in criminal contempt. On review, the Ninth Circuit rejected defense counsel's argument that his conduct was a good-faith tactic to aid cross-examination. The court held that the substitution crossed over the line from zealous advocacy to actual obstruction because it delayed the proceedings in the time taken for the witnesses' misidentification of the defendant. (*Thoreen*, 653 F.2d at 1339.) In addition, it violated the custom practiced in Federal and State courts of general jurisdiction to allow only counsel, parties, and others having the court's permission to sit at counsel's table. *Thoreen*, 653 F.2d at 1341.

Most importantly, the defense counsel's subversive tactics impeded the court's ability to ascertain the truth. The *Thoreen* court noted that making misrepresentations to the court is inappropriate and unprofessional behavior. The guidelines promulgated in that State's code of professional responsibility to guide an attorney's conduct explicitly decree that an attorney's participation in the presentation or participation of false evidence is unprofessional and subjects him to discipline. (*Thoreen*, 653 F.2d at 1340.) In addition, the *Thoreen* court noted that substituting a person for the defendant in a criminal case without a court's knowledge has been noted as an example of unethical behavior by the American Bar Association Committee on Professional Ethics. *Thoreen*, 653 F.2d at 1340 (citing Informal Opinion No. 914 (February 24, 1966), decided under the former American Bar Association Code of Professional Responsibility).

Similarly, in *Miskovsky v. State ex rel. Jones* (Okla. Crim. App. 1978), 586 P.2d 1104, the defense counsel was found in direct contempt of court after he substituted another person at counsel's table, and seated his own client in the gallery. The reviewing court found that counsel's conduct consisted of knowingly implementing a plan of deception that would affect the witnesses, the District Attorney, and the court. (*Miskovsky*, 586 P.2d at 1108.) The defense counsel's actions were designed to create that mistaken assumption. By resorting to deception and misrepresentation to protect his client's interests, the defense counsel showed a disrespectful attitude for the judicial process. *Miskovsky*, 586 P.2d at 1108.

The *Miskovsky* court reasoned that the contemptuous conduct was not merely the substitution of another person for the defendant, a tactic that may have been frequently employed in that area. (*Miskovsky*, 586 P.2d at 1108.) Rather, the contempt finding was derived from

defense counsel's substitution of an individual other than defendant at counsel's table *without the knowledge of the court.* (*Miskovsky*, 586 P.2d at 1108.) The *Miskovsky* court also noted that that State's code of professional responsibility prohibited lawyers from engaging in conduct involving dishonesty, fraud, deceit or misrepresentation, or conduct that is prejudicial to the administration of justice. (*Miskovsky*, 586 P.2d at 1108.) The court concluded that these standards justify a court's reliance upon the defense counsel to refrain from the type of misrepresentation perpetrated by the defense attorney. (*Miskovsky*, 586 P.2d at 1109.) Similar to the *Thoreen* and *Miskovsky* courts, we conclude that that appellant's conduct in the instant case constitutes direct criminal contempt.

For the reasons stated, the judgment of the appellate court, which affirmed the judgment of the circuit court in finding appellant guilty of direct criminal contempt but reduced the fine imposed to $100, is affirmed.

*Judgment affirmed.*

JUSTICE NICKELS, dissenting:

I do not agree that placing an individual in the defendant's customary place at counsel's table, without more, is a sufficient basis from which to infer an intent to hinder or obstruct the administration of justice or impugn the integrity of the court. After a thorough review of the record, I believe that defense counsel was acting in good faith to protect his client from a suggestive in-court identification.

Criminal contempt is warranted for "conduct calculated to embarrass, hinder or obstruct a court in its administration of justice or to derogate from its authority or dignity, or bring the administration of law into disrepute." (*In re Estate of Melody* (1969), 42 Ill. 2d 451, 452, quoted in *People ex rel. Kunce v. Hogan* (1977), 67 Ill. 2d 55, 59-60.) The usual protections of procedural

due process do not apply to direct criminal contempt, which is punishable without notice or hearing, because the acts occur in the very presence of the judge. (*People v. Gholson* (1952), 412 Ill. 294, 299.) While universally recognized as essential to the administration of justice, such power is susceptible to abuse and must be closely examined. (*People v. Loughran* (1954), 2 Ill. 2d 258, 263.) In particular, preserving the independence of the bar requires that a certain latitude be given to attorneys acting in good faith and on behalf of their clients. *People v. Miller* (1972), 51 Ill. 2d 76; see *People v. Bertelle* (1987), 164 Ill. App. 3d 831.

This court stated the principles regarding review of direct contempt orders in *Miller*, 51 Ill. 2d at 78:

> "The general doctrine that a reviewing court will ordinarily sustain a proper ruling of a trial court even though the ground assigned for the ruling was erroneous does not apply in the review of direct contempt orders. Direct contempt is predicated upon specific misconduct which interferes with the orderly administration of justice, and therefore an order imposing punishment for direct contempt must state, or the record must show, the specific acts upon which it is based. Such an order must be sustained upon the ground on which it was imposed, or not at all, for otherwise a contempt judgment might be affirmed in a reviewing court upon the basis of conduct which the trial court had found inoffensive."

Therefore, I examine the record and the judge's detailed order to determine whether defense counsel's conduct is sufficient to support a charge of contempt.

At trial, the judge made two findings regarding the basis for the contempt charge. The first finding occurred after defense counsel asked the judge to state for the record the reason for the contempt. The judge responded, "You have brought a person in here to sit next to you as defendant, *to mislead the State's Attorney and to mislead the police officer*. That's my finding." (Emphasis added.) I am not aware of a duty imposed upon a defense

attorney to assist an eyewitness or the State by providing a suggestive identification setting. In refusing to assist the State's eyewitness, defense counsel's conduct is not calculated to embarrass, hinder or obstruct the court. Instead, counsel· is merely requiring the State to prove its case. Thus, this finding is not sufficient to support the contempt charge.

On the trial record, the judge made a second statement to support his finding of direct criminal contempt. The judge stated, "You have not had a person sitting beside you that looked like your co-counsel or anyone that is an attorney from your office. And you have, I think, purposely done this to mislead the court." Similarly, the majority also finds that defense counsel intended to deceive the court by placing Armanentos in the defendant's customary place at counsel's table.

A contemptuous state of mind can be inferred from an act calculated to embarrass or obstruct the court. (*Hogan*, 67 Ill. 2d at 59-61 (finding an attorney's filing of a civil suit against the presiding judge in a criminal case before sentencing allows for a reasonable inference of contemptuous intent).) However, not every questionable act can give rise to such an inference, particularly where the conduct involves a defense counsel's representation of a client. For example, in *Miller*, 51 Ill. 2d 76, this court reviewed a direct contempt order imposed against a defense attorney for sarcastic comments made during a trial. This court found that although counsel was "improperly sarcastic" and "overzealous," his questionable conduct was committed in good-faith representation of his client and was therefore not contemptuous. *Miller*, 51 Ill. 2d at 79.

In determining whether the necessary contumacious intent can be inferred from a particular act, I agree with the majority that a reviewing court must look to the surrounding circumstances and the character of the

action of the defendant. (*Hogan*, 67 Ill. 2d at 61.) My examination of the record reveals that defense counsel's conduct was a good-faith attempt to protect his client from a suggestive in-court identification, and not an attempt to deceive or obstruct the court.

First, the surrounding circumstances show a good-faith reason to test the State's ability to identify the defendant. The trial had been delayed by the State, the State had no complaining witness, and the entire case rested on the testimony of Officer LaMorte. In addition, Officer LaMorte testified that he had not taken defendant's driver's license at the scene of the accident. Second, the character of defense counsel's conduct does not show disrespect for the court's authority or an attempt to disrupt the proceedings. Defense counsel showed respect to the court during the entire trial. At no point did defense counsel address the court in an inappropriate manner, disobey an order, or disrupt the proceedings. Immediately after the misidentification, defense counsel placed Armanentos on the stand in order to disclose his identity. Given the unreliability of an identification based only upon the placement of defendant at counsel's table, defense counsel acted in good faith and on behalf of his client. This is not conduct that evidences a contumacious design. *Miller*, 51 Ill. 2d 76.

The majority finds that defense counsel intended to deceive the court and such conduct is sufficient to support a charge of contempt. In support of this conclusion, the majority relies on defense counsel's actions in telling the clerk that his defendant would not testify and the brief delay in alerting the court to the misidentification. However, my examination of the judge's order and the record do not support drawing this conclusion.

The judge's supplemental findings charge that defense counsel misrepresented to the court clerk that the person seated next to him was the defendant in the

case. However, the record does not support a finding that any misrepresentation took place. The record discloses only that when witnesses were called to be sworn, the court clerk asked, "Is your defendant [going to be sworn]?" In reply, defense counsel answered, "No." The judge's findings state that "the obvious inference of this comment to the court and the clerk was that person was the defendant because witnesses were excluded."

However, because of the dangers inherent in summary contempt, this court has repeatedly stated that "it should be exercised with utmost caution and strictly restricted to acts and facts seen and known by the court, and no matter resting upon opinions, conclusions, presumptions or *inferences* should be considered." (Emphasis added.) *Loughran*, 2 Ill. 2d at 263; see also *People v. Jashunsky* (1972), 51 Ill. 2d 220, 226; *People v. Tavernier* (1943), 384 Ill. 388, 392-93.

In addition, the finding is factually incorrect. The record shows that no motion to exclude witnesses was made at the beginning of the trial when the witnesses were called to be sworn. The motion to exclude witnesses was not made until the State rested. Where the record of the proceedings is in conflict with the contempt order, the record of the proceedings controls. (*Jashunsky*, 51 Ill. 2d at 227.) Even if made, the motion would not have applied to Armanentos, who would have only been called as a witness if he was misidentified as the defendant. Since the finding is based upon an inference and is factually incorrect, the finding cannot support the charge of contempt.

The supplemental findings also state that defense counsel's conduct caused the trial court to make a false finding and that counsel's silence in this circumstance misled the court. The majority also finds that defense counsel's silence directly after the misidentification evinces a contumacious intent to deceive the court.

I disagree. The finding entered into the record was based upon the testimony of Officer LaMorte and the court's own assumptions, not any misrepresentation by counsel. A defense attorney has no obligation to assist the State by alerting an identification witness as to defendant's location. Although defense counsel did not alert Officer LaMorte to his misidentification by immediately disclosing defendant's location, counsel did promptly place Armanentos on the stand after Officer LaMorte was excused to disclose his identity to the court. Defense counsel's silence was brief and lasted only as long as necessary to protect his client. In light of the seriousness of allowing an identification based only upon defendant's placement in the courtroom, defense counsel acted in good faith and on behalf of his client. Such conduct is insufficient to support a charge of contempt. *Miller*, 51 Ill. 2d at 79.

Under different circumstances, I agree that placing someone other than the defendant at counsel's table could evidence the contemptuous intent necessary to support a contempt charge. The *Thoreen* case relied upon by the appellate court and the majority provides an example. (*United States v. Thoreen* (9th Cir. 1981), 653 F.2d 1332.) *Thoreen* involved the trial of a salmon fisherman for violating an injunction against salmon fishing. First, the character of the defense attorney's conduct in *Thoreen* showed an intent to mislead the court. The defense attorney in *Thoreen* actually disguised the person seated in defendant's place at counsel's table by dressing him in outdoor clothing, including heavy shoes, a plaid shirt and a jacket-vest. Unlike the contemnor below, the defense attorney in *Thoreen* actually gestured to the imposter as though he were the defendant and conferred with him during the trial. (*Thoreen*, 653 F.2d at 1336.) Second, there were no circumstances in *Thoreen* showing a need to test the

reliability of the State's identification, as identification was not in issue. (*Thoreen*, 653 F.2d at 1338.) In using a disguise where identification was not in issue and gesturing to the defendant as his client, the attorney in *Thoreen* was not acting in good-faith representation of his client but was engaging in conduct calculated to obstruct the administration of justice.

I recognize that several jurisdictions which have considered the issue require counsel to inform the court before testing an in-court identification by placing someone other than defendant at counsel's table. (See, *e.g.*, *Thoreen*, 653 F.2d 1332; *Miskovsky v. State ex rel. Jones* (Okla. Crim. App. 1978), 586 P.2d 1104.) I agree with the majority that there are a variety of better ways to protect a defendant from such suggestive in-court identifications, including in-court lineups or other experiments done with the court's permission. The issue presented for review is not whether counsel made the best choice, but whether his specific conduct showed disregard for the court's authority and the administration of justice. A review of the record shows defense counsel was respectful at all times. Counsel did not misrepresent the identity of defendant in any way and attempted in good faith to test the veracity of the State's case. Under these facts, I believe counsel successfully charted a narrow pathway through a questionable course of conduct.

For the reasons stated, I would vacate the order finding defense counsel in direct criminal contempt of court. Therefore, I respectfully dissent.

JUSTICES HARRISON and McMORROW join in this dissent.