NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2022 IL App (4th) 220413-U

NO. 4-22-0413

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
December 15, 2022
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Livingston County |
| JASON CORDRAY, | ) | No. 19CC11 |
| Defendant-Appellant. | ) | |
| | ) | |
| | ) | Honorable |
| | ) | Jennifer H. Bauknecht, |
| | ) | Judge Presiding. |

JUSTICE DeARMOND delivered the judgment of the court.
Justices Turner and Zenoff concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The appellate court affirmed, finding the trial court did not err in finding
defendant in direct criminal contempt.

¶ 2    Following an August 2019 jury trial, defendant, Jason Cordray, was found guilty

of one count of criminal trespass to a residence, a Class 4 felony (720 ILCS 5/19-4(a)(2), (b)(2)

(West 2018)).

¶ 3    In October 2019, the matter proceeded to sentencing. During defendant's

statement in allocution, defendant made a series of rambling, incoherent statements, leading the

trial court to believe he was intoxicated. The court ordered defendant to undergo drug testing—

which subsequently returned positive results for alcohol, methamphetamine, and cocaine—and

continued the hearing.

¶ 4       In November 2019, the trial court sentenced defendant to three years'
imprisonment. Because defendant appeared at the previous hearing under the influence of drugs,
the court imposed an additional 180-day sentence for being in direct criminal contempt of court,
to be served consecutively to defendant's 3-year sentence for the underlying conviction of
criminal trespass to a residence.

¶ 5       Defendant appeals, arguing the trial court erred in finding him in direct criminal
contempt of court because the evidence was not sufficient to support his conviction. We affirm.

¶ 6                              I. BACKGROUND

¶ 7       In August 2019, a jury found defendant guilty of one count of criminal trespass to
a residence, a Class 4 felony (720 ILCS 5/19-4(a)(2), (b)(2) (West 2018)).

¶ 8       In October 2019, the matter proceeded to a sentencing hearing. Based on his
criminal background, defendant was eligible for an extended-term sentence (730 ILCS 5/5-8-2(a)
(West 2018)). Before imposing defendant's sentence, the trial court allowed defendant to make a
statement in allocution, which was as follows:

> "Yeah. I, I would like to say first I've struggled. I went to—I've been to
> prison six times which is not even right. And I come from a good family. I'm a
> good person. And my record is domestic. Well, what I have to or what I'd like to
> say for myself and Big Muddy, well, because my brother worked at Sheridan I
> had to go to another treatment.
>
> Anyway, I done [*sic*] 18 months of therapy which I took living lifestyles.
> Then not only I took living lifestyles as I was in the alcoholic drug addict program
> which I have learned my problem throughout life that there's healthy
> relationships. There's unhealthy relationships. And I didn't figure out the key of

unhealthiness to alcohol and relationships which I was addicted to. Well, I didn't find healthy relationships, which so I remained since I programmed for 18 months I've learned through programming that if I want healthy, you have to be healthy. Well, how long is that going to take? It could be a long time. But I want healthy, and I will remain until [defendant's] healthy, and I'm not. I've got medications. The doctor says, so I'd rather get off everything. And yeah, you know, assume this and that.

So for the last I'd say year or after six months I actually worked. I got out; and I said, I smoke cigarettes and I drink energy drinks. But I had to parole to my mother's house; and I made it, I made—[i]t's about boundaries, commitments to yourself which I break [defendant's] rules. I don't like to have words which I say, but when I say it, I know it in my like—"

At this point, defendant's "thick[-]tongued" speech and incoherent statements prompted the trial court to inquire whether he was under the influence of something, whereupon the following exchange occurred between defendant and the court:

"THE COURT: Just answer my questions because I'm very concerned about your condition right now.

THE DEFENDANT: Yeah. Well—

THE COURT: If I drug and alcohol test you, what will you test positive for?

THE DEFENDANT: Well, well, of prescribed medication.

THE COURT: Are you taking them as prescribed, or are you taking more than that is prescribed?

THE DEFENDANT: No. I've got the same of the medication which there is extended release on [E]ffexor and there's ex—

THE COURT: All right, I'm going to revoke his bond; and I'm going to continue the sentencing hearing; and I want a drug test. We'll come back for sentencing. You are clearly under the influence of something.

THE DEFENDANT: No.

THE COURT: [Defendant], don't look at [defense counsel]; and don't look at that bag.

All right, *** I want a drug test; and I want levels. There is no way on God's green earth that you are taking them as prescribed.

THE DEFENDANT: Well, sentence me now to six. No. I'll take six now.

[DEFENSE COUNSEL]: Don't challenge her.

THE DEFENDANT: I will challenge her. I'll take the six right now.

THE COURT: All right. Well, we're going to drug test you first.

THE DEFENDANT: Because we went over, way over time we're violating laws that you all, that—[t]his is way over the beam. You are breaking laws.

THE COURT: Okay. Well, I want to record to reflect—

THE DEFENDANT: And parole don't [*sic*] let you leave out of prison unless you are approved. I would never—I want to apologize for that. I would never ask to leave.

* * *

THE COURT: Hold on. Sit down. I'm not done. I want the record to reflect that [defendant is] slurring words. He's incoherent. He is not answering questions, and he is acting completely different than he normally acts when he's in this courtroom.

Now, I know that you are high strung. *** But right now you are acting goofy. You are acting very strange. You are not making any sense, and obviously you are under the influence of something so we're going to find out what it is.

THE DEFENDANT: No, we're not.

THE COURT: And we're going to come back for sentencing. Is two weeks enough time? Two weeks enough time to get—

THE DEFENDANT: Six year. No. I'm not doing it.

[DEFENSE COUNSEL]: [Defendant], don't argue.

* * *

THE DEFENDANT: I'm not doing it. I won't.

[DEFENSE COUNSEL]: Stop.

THE COURT: All right. You can go ahead and take him out of the room.

* * *

THE DEFENDANT: Give those prescriptions to—I love you. You ain't [*sic*] got to jerk. I'm not jerking. I'm a man, and I respect you for that."

¶ 9    The parties reconvened for sentencing on November 14, 2019. At the outset of the proceeding, a probation officer from the court services department informed the trial court defendant tested positive for cocaine, methamphetamine, and alcohol two days after the October 2019 hearing. Following the recommendations of counsel, the court allowed defendant to make

another statement in allocution, at which point defendant apologized for his "relapse." Defendant also admitted he "was around the wrong people" and "took a drink of a drink that [he] should not have."

¶ 10        The trial court ultimately sentenced defendant to three years' imprisonment for the underlying conviction of criminal trespass to a residence and found defendant guilty of direct criminal contempt. In doing so, the court found defendant's "conduct was contemptuous and defiant of this Court's authority." The court also noted it "was very careful to identify at the last court date *** that the [d]efendant was highly intoxicated," which "was evident by his behavior in this courtroom in slurring his speech immensely and through his conduct." The court then elaborated, "You brought the administration of justice in this courtroom into disrepute and are guilty *** of direct criminal contempt for showing up for your sentencing hearing in a condition under the influence of methamphetamine, cocaine, that was in your system 48 hours after you were in court." Thereafter, the court sentenced defendant to 180 days in the county jail for direct criminal contempt—to be served consecutively to defendant's 3-year prison sentence—and ordered him transferred to the Illinois Department of Corrections upon completion of his 180-day sentence.

¶ 11        On November 20, 2019, the trial court entered a written order memorializing its contempt finding. The order of adjudication stated, in pertinent part, "[w]hen the Court granted the defendant an opportunity to make a statement in allocution, it became evident that the defendant was under the influence of drugs and/or alcohol. The defendant was acting very out of the ordinary, slurred his words, and was not coherent." The court then found defendant's conduct, "which occurred in the presence of this Court while the Court was in open session,

impeded and interrupted this Court's proceedings, lessened the dignity of the Court, and tended to bring the administration of justice into disrepute."

¶ 12    This appeal followed.

¶ 13                                    II. ANALYSIS

¶ 14    On appeal, defendant contends the evidence was not sufficient to support his conviction of direct criminal contempt. Specifically, defendant asserts his allegedly contemptuous behavior did not sufficiently take place within the trial court's presence because the court "did not personally observe the taking of illegal drugs."

¶ 15                                    A. Mootness

¶ 16    As a preliminary matter, we consider whether this appeal is moot. The State contends the appeal is moot because defendant has served his 180-day sentence imposed pursuant to the trial court's contempt finding. The State further argues the instant cause does not fit within an exception to the mootness doctrine and, thus, we must dismiss the appeal. We disagree.

¶ 17    An adjudication of contempt imposing a fine or imprisonment is an appealable order. *People v. Buckley*, 164 Ill. App. 3d 407, 412, 517 N.E.2d 1114, 1117 (1987). "[A]n appeal from a contempt order is ordinarily considered moot where the party held in contempt has served the sentence." *In re J.L.D.*, 178 Ill. App. 3d 1025, 1030, 534 N.E.2d 190, 193 (1989). However, as our supreme court explained, "the completion of a defendant's sentence renders a challenge to the sentence moot, but not a challenge to the conviction. [Citation.] Nullification of a conviction may hold important consequences for a defendant." *In re Christopher K.*, 217 Ill. 2d 348, 359, 841 N.E.2d 945, 952 (2005). Here, defendant challenges his conviction, in which he has an ongoing interest, given the "obvious advantages in purging oneself of the stigma and disabilities

which attend a criminal conviction." *People v. Davis*, 39 Ill. 2d 325, 329, 235 N.E.2d 634, 636 (1968). Accordingly, defendant's completion of his sentence has no bearing on his ability to obtain relief and we will consider his appeal.

¶ 18                                 B. Contempt

¶ 19         Under Illinois law, all courts possess the inherent power to punish contempt because such power is essential to a court's maintenance of its authority and the administration of judicial powers. *People v. Simac*, 161 Ill. 2d 297, 305, 641 N.E.2d 416, 420 (1994). "However, the exercise of such power is 'a delicate one, and care is needed to avoid arbitrary or oppressive conclusions.' " *Simac*, 161 Ill. 2d at 306 (quoting *Cooke v. United States*, 267 U.S. 517, 539 (1925)). Our supreme court has defined criminal contempt of court "as conduct which is calculated to embarrass, hinder or obstruct a court in its administration of justice or derogate from its authority or dignity, thereby bringing the administration of law into disrepute." (Internal quotation marks omitted.) *Simac*, 161 Ill. 2d at 305 (quoting *People v. L.A.S.*, 111 Ill. 2d 539, 543, 490 N.E.2d 1271, 1273 (1986)). "A finding of criminal contempt is punitive in nature and is intended to vindicate the dignity and authority of the court." *Simac*, 161 Ill. 2d at 305-06.

¶ 20         Illinois law recognizes two types of criminal contempt, direct and indirect. See *L.A.S.*, 111 Ill. 2d at 543. Here, the trial court found defendant committed direct criminal contempt. "Direct criminal contempt may occur in either of two ways: (1) the contemptuous acts are personally observed by the judge or (2) the contemptuous acts are committed outside the immediate physical presence of the judge but within an integral part of the court, *i.e.*, the circuit clerk's office." *People v. Hixson*, 2012 IL App (4th) 100777, ¶ 12, 965 N.E.2d 447. In direct-criminal-contempt cases, "the trial court is the trier of fact. That means the court, as in a bench trial, has the responsibility to determine the credibility of witnesses, weigh evidence, draw

reasonable inferences therefrom, and resolve conflicts in the evidence." *Thomas v. Koe*, 395 Ill. App. 3d 570, 582, 924 N.E.2d 1093, 1102 (2009). "When reviewing a finding of direct criminal contempt, we look to whether (1) 'there is sufficient evidence to support the finding of contempt,' and (2) 'whether the judge considered facts outside of the judge's personal knowledge.' " *In re Contempt of Turner*, 2016 IL App (4th) 160245, ¶ 24, 69 N.E.3d 895 (quoting *Simac*, 161 Ill. 2d at 306). "A finding of direct criminal contempt is strictly restricted to acts and facts seen and known by the court, and no matter resting upon opinions, conclusions, presumptions or inferences should be considered." (Internal quotation marks omitted.) *Turner*, 2016 IL App (4th) 160245, ¶ 24 (quoting *Simac*, 161 Ill. 2d at 306). Additionally, "[d]irect criminal contempt may be found and punished summarily because all elements are before the court and *** come within its own immediate knowledge." *L.A.S.*, 111 Ill. 2d at 543. "Therefore, the usual procedural-due-process safeguards are not required for a direct-criminal-contempt conviction." *Hixson*, 2012 IL App (4th) 100777, ¶ 13.

¶ 21            Here, the record demonstrates sufficient evidence to support the trial court's contempt finding. Although defendant attributes the court's finding of direct criminal contempt to its alleged need for "extrinsic evidence in the form of *** lab tests," the court's passing reference regarding the specific substances defendant tested positive for does not support his claim that the court "did not observe [him] to be 'intoxicated in court.' " To the contrary, the record contains no indication the court considered any evidence other than what occurred at the October 2019 sentencing hearing, and it is clearly apparent defendant exhibited signs of intoxication throughout his statement in allocution. Moreover, the court concluded—at that same hearing—defendant was "clearly under the influence of something" based on his conduct. Thus, the court's brief reference with respect to the specific substances defendant tested positive for

was nothing more than unnecessary surplusage because the court observed defendant's behavior firsthand at the October 2019 hearing and needed no extrinsic evidence to find defendant in direct criminal contempt.

¶ 22 To be sure, the October 2019 transcript contains an account of the specific acts on which the contempt order was based. More importantly, the source came from the trial judge herself, who personally observed defendant's mannerisms and "thick[-]tongued" speech, and who stated on the record what happened in her presence after it became clear defendant was "under the influence of something." The court stated, "[defendant's] slurring words. He's incoherent. He is not answering questions, and he is acting completely different than he normally acts when he's in this courtroom." Subsequently, at the November 2019 hearing, the court repeated its previous observations, stating it "was very careful to identify at the last court date *** that the [d]efendant was highly intoxicated," which "was evident by his behavior in this courtroom in slurring his speech immensely and through his conduct." We also note, at that same hearing, defendant apologized for his "relapse" and admitted he "took a drink of a drink that [he] should not have." In its written order of contempt, the court memorialized its finding, stating, "[w]hen the Court granted the defendant an opportunity to make a statement in allocution, it became evident that the defendant was under the influence of drugs and/or alcohol. The defendant was acting very out of the ordinary, slurred his words, and was not coherent." The court then found defendant's conduct, "which occurred in the presence of this Court while the Court was in open session, impeded and interrupted this Court's proceedings, lessened the dignity of the Court, and tended to bring the administration of justice into disrepute." As the record demonstrates, the obvious conclusion to be drawn is that the reason the trial court

suspended the proceedings was because it personally observed defendant's conduct as well as defendant being reprimanded by his attorney to not argue with the court and stop talking.

¶ 23        Nor are we persuaded by defendant's suggestion his behavior was not calculated to "embarrass, hinder, or obstruct the court in its administration of justice." In support of his argument, defendant refers us to *People v. Hanna*, 37 Ill. App. 3d 98, 345 N.E.2d 179 (1976). In *Hanna*, the trial court found the *pro se* defendant to be in direct criminal contempt after the defendant stated, " 'The way things are going now my side ain't [*sic*] ever going to be heard— uh—but I'm going to get it—I'm going to get it on the record. I'm going to make a record, because I know what happened. This Court has messed up so much already it's pathetic.' " (Emphasis omitted.) *Hanna*, 37 Ill. App. 3d at 99. This court, by split decision, reversed, noting, "an isolated, disparaging statement not made in loud voice or boisterous manner but offensive to the sensibilities of the judge, although embarrassing to the court and derogating from its dignity, is not contempt." *Hanna*, 37 Ill. App. 3d at 99. However, the circumstances presented in *Hanna* are distinguishable from those presented here. Unlike in *Hanna*, we are not confronted with a finding of contempt against a defendant who, while acting as his own attorney, aggressively insisted upon making a complete record and preserving his rights in a criminal case. Rather, in the present case, defendant appeared disoriented and delusional during his statement in allocution. He made several incoherent and rambling statements, failed to respond to the trial court's questions intelligibly, argued with counsel, and initially refused to comply with the court's commands before being removed from the courtroom. Furthermore, the record contains evidence defendant was not unfamiliar with court proceedings, given his eligibility for an extended-term sentence based on his criminal background. See *People v. Smith*, 2019 IL App (4th) 160641, ¶ 88, 141 N.E.3d 688 (stating a contemnor's intent may be inferred from the

surrounding circumstances and the character of his or her conduct in a direct-criminal-contempt proceeding).

¶ 24     Upon reviewing the record in the instant case, we conclude defendant's conduct was contemptuous and required the action taken by the trial court. As the court noted at the sentencing hearings—and again in its written order—defendant's actions while he was "under the influence of something" impaired the ability of the court to perform its functions and caused the courtroom proceedings to come to a halt. The court's recitation of these facts, which the court personally observed, provided sufficient evidence to support its finding defendant was in direct criminal contempt of court and, as stated above, the record contains no indication the court considered any evidence other than what occurred at the October 2019 sentencing hearing. See *Turner*, 2016 IL App (4th) 160245, ¶ 24. As a result, the court did not err in summarily finding defendant in direct criminal contempt of court. See *L.A.S.*, 111 Ill. 2d at 543.

¶ 25                              III. CONCLUSION

¶ 26     For the foregoing reasons, consistent with Illinois Supreme Court Rule 23 (eff. Jan. 1, 2021), we affirm the trial court's judgment.

¶ 27     Affirmed.