NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2024 IL App (4th) 231329-U

NO. 4-23-1329

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
December 16, 2024
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Winnebago County |
| ALBERT T. EDWARDS, | ) | No. 23CC50 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Tamika R. Walker, |
| | ) | Judge Presiding. |

PRESIDING JUSTICE CAVANAGH delivered the judgment of the court.
Justices Harris and Grischow concurred in the judgment.

**ORDER**

¶ 1    *Held*: The appellate court affirmed, finding the trial court did not err in finding
defendant in direct criminal contempt.

¶ 2    The trial court found defendant, Albert T. Edwards, in direct criminal contempt of

court and sentenced him to six days with day-for-day credit to apply in the Winnebago County

jail. On appeal, defendant argues the court erred when it (1) failed to admonish him about his

conduct prior to finding him in contempt of court pursuant to Illinois Supreme Court rules,

(2) denied him his right to make a statement in allocution, and (3) failed to advise him of his

appeal rights. He claims he was illegally incarcerated for three days. We affirm.

¶ 3                                I. BACKGROUND

¶ 4    On August 31, 2023, defendant appeared before the trial court on his motion to

vacate an *ex parte* judgment against him. The State objected, arguing it had not received notice

of defendant's motion. Defendant immediately interjected he had filed his motion with the clerk's office. The court attempted to allay defendant's consternation regarding the State's objection when the following exchange occurred:

"THE DEFENDANT: No. I'm not going. Judge, I'm not going. I'm not going. I'm not going. I filed [the motion to vacate the *ex parte* judgment] with the clerk. I came down there. I had five working days to file it. I filed it on time. This is what we're here for. [The State] can go look at it. He can do what he want. I'm missing—you made—you made a ruling. You never asked me for insurance. Nobody has asked me for insurance. The car wasn't mine. It's insured. State of Illinois got the insurance paper.

That sham court y'all running, I'm not going. You can't do nothing to me. I'm not going. I filed. He know I filed on time. Let's get my trial going. I paid for a trial. I'm not going. And you know I'm not going. You know it. He know it. I'm not going. There's nothing you can do to [me]. Nothing.

I am entitled to a trial. I want a jury trial. You charge me for a jury trial. Remember the fee? I paid the fee. I have a constitutional right to a jury trial. I'm demanding a jury trial. That's my rights. Now if I have no rights, just say, [defendant], you have no rights. But if I have rights, give me my jury trial, please. Please.

THE COURT: [Defendant], are you done arguing at this point? Would you like—

THE DEFENDANT: No, that's not an argument. That's the law and the constitution.

THE COURT: [Defendant], would you like—

THE DEFENDANT: That's not an argument.

THE COURT: Would you like me to rule on your motion?

THE DEFENDANT: I'm entitled to that by the constitution and the law and the court Rules of Criminal Procedure.

THE COURT: Mr. —

THE DEFENDANT: I am entitled. I am—you—you know, and you put your head down or whatever.

THE COURT: [Defendant], I'd—

THE DEFENDANT: I'm not going—

THE COURT: —like to be able to rule on your motion—

THE DEFENDANT: —to come down there to that trash.

THE COURT: —but you won't stop speaking.

THE DEFENDANT: That's why I didn't want to come down there—

THE COURT: All right.

THE DEFENDANT: —to that kangaroo court.

THE COURT: All right. At this point, I've muted [defendant] because he's talking over me, will not allow me to address his motion. If he were to stop speaking, I could address his motion very clearly.

And what I was going to indicate, I think [defendant] thinks he knows what I'm going to say, but I can certainly guarantee you that he does not. What I was going to say is, because he is a *pro se* defendant, he is required to send notice

- 3 -

to the prosecuting agency as to his motion. He failed to do so; however, over the City's objection—

THE DEFENDANT: Man—

THE COURT: —because this is a *ex parte* judgment, I am going to grant his motion to vacate the *ex parte* judgment of conviction and ask that the clerk of court send notice to the secretary of state that the conviction has been vacated. So I'm granting [defendant's] motion.

As it relates to the remainder, [defendant] also filed a motion for a recusal that is still pending with the Court that needs to be addressed. [Defendant], I will give you five minutes to address your motion, and then I'm going to give [the State] the same amount of time, if [it] requests it, to respond to your motion. And then we are going to have a ruling on that motion.

And when I speak, you don't speak. When you speak, I don't speak. But I am giving you five minutes to address your motion for recusal starting now.

THE DEFENDANT: I'm addressing my motion for recusal because you insulted me. You tried to take my constitutional right. I have a right to represent myself. Originally, when you asked me did I have a lawyer, I said, no, I'm representing myself. You told me out your mouth you cannot represent yourself. That is incorrect. I have a right to an attorney. I also have a right to represent myself once shown that I am competent.

You also insulted me. I am older than you. I am smarter than you and wiser than you. You called me a child. You are on the bench sending out personal opinions, personal decision. You're not following the law. You're not following

- 4 -

the constitution. You don't—you don't know, you do not deserve to be on my case.

You're going—you made a ruling on the insurance that the car was insured. You gave me a $500 fine for something that's already insured. You charged me for a jury trial that I didn't have to pay a fee for, but I paid the fee for anyway.

You're not following the law. You need to be off my—I don't even know, but the recusal motion is supposed to go to another judge. How you going to recuse yourself? You're too personal and caught up in here. You know, you're not the public defender no more. *** Yes, I have researched you, and if I have to go at your license for this foolishness that you on, I will definitely do. You need to be off my case. You cannot make rational decisions. And that's why I filed the motion for recusal.

THE COURT: Was there anything else, [defendant]?

THE DEFENDANT: That's it."

¶ 5   Thereafter, the trial court permitted the State to respond to defendant's argument. The State said it had not received notice of defendant's motion for recusal and was not prepared to address defendant's arguments. The court explained that it did not "have any personal knowledge or prejudice against this defendant," stating it "was appalled by [defendant's] courtroom behavior and demeanor," when defendant again interrupted:

"THE DEFENDANT: Woah. That's personal.

THE COURT: —at the last court date.

THE DEFENDANT: That's personal.

- 5 -

THE COURT: All right. I'm going—

THE DEFENDANT: That's personal.

THE COURT: —to mute [defendant] because, again, I said that when I spoke, he's not to speak. He again continues to do that. So I am muting him so that I can make my decision on the record so that the record is clear. As a—

THE DEFENDANT: That decision already been f*** made.

THE COURT: —as a judge—okay. I'm going to again mute him. As a judge, I am allowed to comment on a party's demeanor and how they behave in court. I could have held [defendant] in contempt at the last court date—

THE DEFENDANT: Why didn't you?

THE COURT: —and—

THE DEFENDANT: Why didn't you?

THE COURT: —quite frankly, I did not because I was attempting to give him an opportunity to try to behave a little bit differently, but clearly, that is not occurring. I can make a comment and I can observe someone's behavior; that does not then imply that I have bias against the defendant.

THE DEFENDANT: That's bias.

THE COURT: I do not know—

THE DEFENDANT: You're personal.

THE COURT: — [Defendant], I—

THE DEFENDANT: That's a personal—

THE COURT: —I do not have any bias against him. That has no reflection on whether or not I can make a decision in this case.

Subsection (A)(2) talks about knowing the—that the judge knows that there's a third degree relationship with the party or I've acted as a lawyer in the proceeding or have an interest in this proceeding or will likely be a material witness. None of those issues apply.

As to Subsection (A)(3), there's no economic interest in this matter. I've not made any public statement regarding this matter. I've never served as a lawyer in the matter, represented this defendant. He's not been associated in private practice with me in the last three years.

I don't believe any of the basis for disqualification under Rule 2.11 apply in this matter. His motion for recusal is denied. We will set this matter for a jury trial.

THE DEFENDANT: Who do I—who do I appeal that s*** to? Who do I appeal it to?

THE COURT: Again I'm to mute [defendant] because he continues to be disrespectful to the Court and curse and do things that are unnecessary.

THE DEFENDANT: This ain't no court. It's kangaroo.

THE COURT: Okay. Again, I am muting [defendant].

THE DEFENDANT: It's kangaroo court.

THE COURT: There will be a subpoenas *duces tecum* return date in this matter on October 6th. Does that give you enough time, Counsel?

MR. NICOLISI: Yes.

THE DEFENDANT: You're going to ask him? What the h***, why don't you ask me do I need enough time?

THE COURT: Okay. So and again, I'm going to mute [defendant]. The subpoena *duces tecum* return is for the State to file any additional subpoenas that are necessary. It's not something that [defendant] —

THE DEFENDANT: Give me my trial.

THE COURT:— [defendant] needs to do.

THE DEFENDANT: Get you're a*** of the—

THE COURT: So therefore, I'm going to set a jury status date of October 18th at 8:30. Jury trial date of October 24th at 8:30.

THE DEFENDANT: I don't need no f*** status.

THE COURT: Okay. At this point, I'm holding [defendant] in contempt. [Defendant] has continually been disruptive to this Court. He has used foul language inappropriately over and over again despite my asking him not to. I will hold him in contempt today. I will direct the sheriff to pick him up. He will be sentenced to 14 days—

THE DEFENDANT: Come get me.

THE COURT: —in the Winnebago—

THE DEFENDANT: Hey, come get me.

THE COURT: —jail—

THE DEFENDANT: Come get me.

THE COURT: —effective the date that he is picked up for his behavior in court today. I would ask the clerk to send him notice of the jury status and jury trial dates that I have indicated.

He is being held in contempt of court. He has clearly challenged me to do so after I made that request.

THE DEFENDANT: You come get me, b***.

THE COURT: He's now calling me—

THE DEFENDANT: You stupid b***.

THE COURT: —names, which is again—

THE DEFENDANT: You stupid b***.

THE COURT: —inappropriate.

THE DEFENDANT: You black b***. You come get me.

THE COURT: So I am going to hold him in contempt of court.

THE DEFENDANT: You stupid b***.

THE COURT: He will be sentenced to—

THE DEFENDANT: F*** you.

THE COURT: —14 days—

THE DEFENDANT: F*** you, b***.

THE COURT: —in the Winnebago County Jail.

THE DEFENDANT: Bring your momma.

THE COURT: I have removed [defendant] from the Zoom at this point because of his behavior. That will be all for today in this matter."

¶ 6      The trial court subsequently entered an order for direct criminal contempt stating, "The Defendant continually interrupted the court, cursed at the court and refused to listen to court directives. The defendant was present via zoom and was so disruptive he had to be

- 9 -

removed from the zoom call." The court ordered a warrant for defendant's arrest and that he serve 14 days in the Winnebago County jail.

¶ 7      On October 13, 2023, defendant filed a "motion to quash arrest warrant," alleging *inter alia*, (1) the trial court did not comply with Illinois Supreme Court rules regarding the conduct of remote court proceedings when it failed to admonish him of the rules, (2) he was denied due process because he was not physically present, (3) the court denied him an opportunity to make a statement in allocution, and (4) the court failed to advise him of his appeal rights.

¶ 8      The parties reconvened in person on October 18, 2023. The State indicated it was not prepared to proceed to a jury trial on defendant's "speeding charge" and opted to move to dismiss the traffic citation. The trial court inquired about a citation for operating an uninsured motor vehicle. The State indicated defendant had previously shown proof of valid insurance and moved to dismiss that citation for compliance. The court granted the State's motions and ordered the traffic citations to be dismissed.

¶ 9      The trial court then permitted defendant to address his motion to quash the arrest warrant. Defendant again argued with the court, often interrupting the court's statements. The court explained local court rules governed conduct related to remote court proceedings in Winnebago County and a copy of those rules was available online. The court conceded, however, because it had to remove defendant from the last court appearance due to his conduct, it did not have the opportunity to allow defendant to make a statement in allocution or to advise him of his appeal rights. The court repeatedly offered defendant an opportunity to make a statement in allocution, but defendant declined. Instead, defendant continued to argue with the court about the legality of the contempt proceedings. The court further advised defendant of his

right to an appeal. Defendant was subsequently taken into custody. The record shows the court ordered defendant to serve six days in the Winnebago County jail beginning on October 18, 2023, and, after the application of day-for-day credit, continuing until October 20, 2023, at or after 6 p.m.

¶ 10 This appeal followed.

¶ 11 II. ANALYSIS

¶ 12 On appeal, defendant argues the trial court erred when it found him in direct criminal contempt of court because the court (1) failed to admonish him about his conduct prior to finding him in contempt of court pursuant to Illinois Supreme Court rules, (2) denied him his right to make a statement in allocution, and (3) failed to advise him of his appeal rights. He claims he was illegally incarcerated for three days.

¶ 13 The State argues we should dismiss defendant's appeal because his brief fails to comply with Illinois Supreme Court Rule 341(h) (eff. Oct. 1, 2020). Specifically, the State claims defendant's brief does not cite the record, nor does it cite any legal authority to support any of his claims, in violation of Rule 341(h)(7) (Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020)). Additionally, it claims defendant's statement of facts (1) does not appropriately outline what occurred during the court hearings, (2) improperly contains argument, and (3) does not reference the record on appeal, in violation of Rule 341(h)(6) (Ill. S. Ct. R. 341(h)(6) (eff. Oct. 1, 2020)).

¶ 14 Rule 341(h) sets forth the rules governing the contents and requirements for an appellant's brief. Rule 341(h)(6) states an appellant's statement of facts "shall contain the facts necessary to an understanding of the case, stated accurately and fairly without argument or comment, and with appropriate reference to the pages of the record on appeal." Ill. S. Ct. R. 341(h)(6) (eff. Oct. 1, 2020). Rule 341(h)(7) states an appellant's argument section "shall contain

the contentions of the appellant and the reasons therefor, with citation of the authorities and the pages of the record relied on." Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020). Rule 341(h) is not a mere suggestion, and it is within this court's discretion to strike an appellant's brief and dismiss the appeal entirely for failing to comply with Rule 341(h). *Niewold v. Fry*, 306 Ill. App. 3d 735, 737 (1999). However, if the violations of supreme court rules do not "hinder or preclude review," the brief need not be stricken in whole or in part. *Gaston v. City of Danville*, 393 Ill. App. 3d 591, 601 (2009).

¶ 15        We agree defendant's brief is utterly noncompliant with Rules 341(h)(6) and (7). However, it is within this court's discretion whether to dismiss defendant's appeal for failing to comply with Rule 341(h). We find defendant's noncompliant brief does not hinder or preclude our review of the issues in this case. Therefore, we will not dismiss defendant's appeal in its entirety for failing to comply with Rule 341(h).

¶ 16        Before we address defendant's contentions on appeal, we must also discern whether defendant's appeal is moot. See *People v. Bass*, 2021 IL 125434, ¶ 29 ("Courts of review will not decide moot or abstract questions, will not review cases merely to establish precedent, and will not render advisory opinions."). In this case, defendant has already served his sentence for contempt. "[A]n appeal from a contempt order is ordinarily considered moot where the party held in contempt has served the sentence." *In re J.L.D.*, 178 Ill. App. 3d 1025, 1030 (1989); see *In re Benny M.*, 2017 IL 120133, ¶ 17 ("An appeal is moot when the issues involved in the trial court no longer exist because intervening events have made it impossible for the reviewing court to grant the complaining party effectual relief."). Defendant's brief does not address the issue of mootness. However, our research shows this court has previously permitted a defendant to challenge his conviction for direct criminal contempt on the basis that he has an

- 12 -

ongoing interest in purging himself of the "stigma and disabilities" of a criminal conviction. (Internal quotation marks omitted.) *People v. Cordray*, 2022 IL App (4th) 220413-U, ¶ 17. Indeed, defendant's sought relief on appeal is the reversal of what he deems an "illegal conviction." Therefore, we will address defendant's contentions on appeal.

¶ 17        In *Cordray*, we stated:

"Under Illinois law, all courts possess the inherent power to punish contempt because such power is essential to a court's maintenance of its authority and the administration of judicial powers. [Citation.] 'However, the exercise of such power is a delicate one, and care is needed to avoid arbitrary or oppressive conclusions.' (Internal quotation marks omitted.) [Citation.] Our supreme court has defined criminal contempt of court 'as conduct which is calculated to embarrass, hinder or obstruct a court in its administration of justice or derogate from its authority or dignity, thereby bringing the administration of law into dispute.' (Internal quotation marks omitted). [Citation.] 'A finding of criminal contempt is punitive in nature and is intended to vindicate the dignity and authority of the court.' " *Cordray*, 2022 IL App (4th) 220413-U, ¶ 19.

¶ 18        Regarding direct criminal contempt, our supreme court has explained:

"Direct criminal contempt is contemptuous conduct occurring 'in the very presence of the judge, making all of the elements of the offense matters within his own personal knowledge.' [Citation.] Direct contempt is 'strictly restricted to acts and facts seen and known by the court, and no matter resting upon opinions, conclusions, presumptions or inferences should be considered.' [Citation.] Direct criminal contempt may be found and punished summarily because all elements

are before the court and, therefore, come within its own immediate knowledge. [Citations.] On appeal, the standard of review for direct criminal contempt is whether there is sufficient evidence to support the finding of contempt and whether the judge considered facts outside of the judge's personal knowledge. [Citation.]" *People v. Simac*, 161 Ill. 2d 297, 306 (1994).

¶ 19 Defendant's first contention on appeal is that the trial court "rushed" to find him in contempt of court for using profanity without first admonishing him about the proper expected courtroom decorum. Defendant points to the "Illinois Supreme Court [having] clearly established guidelines and rules concerning Remote hearings." However, defendant does not cite any specific rules. Defendant's appendix to his brief on appeal contains his motion to quash his arrest warrant, wherein he references Illinois Supreme Court Rule 45 (eff. Jan. 1, 2023), Illinois Supreme Court Rule 46 (eff. May 22, 2020), and Illinois Supreme Court Rule 241 (eff. Feb. 2, 2023), which address the governance of remote proceedings. Additionally, defendant's motion appears to argue remote court proceedings are required to begin with certain admonishments. However, none of the rules defendant cites contain the language he purports in his motion. Moreover, even if we assume, *arguendo*, defendant's purported preliminary admonishments argument is necessarily correct, his argument fails to address whether there was sufficient evidence to support the trial court's finding of contempt or whether the judge considered facts outside of the judge's personal knowledge. Put simply, we find defendant's argument his contempt finding amounts to reversible error because the court did not properly admonish him on how to behave appropriately in court preposterous. Accordingly, defendant's first argument fails to show error.

¶ 20          Defendant next argues the trial court erred because it failed to permit him to make a statement in allocution and did not advise him of his appeal rights prior to finding him in contempt of court. Defendant points to no authority to support this contention. We note that while the court had found defendant in contempt of court on August 31, 2023, no sentence had yet been imposed. See *People v. Caballero*, 102 Ill. 2d 23, 51 (1984) ("The final judgment in a criminal case is the sentence, and, in the absence of the imposition of a sentence, an appeal cannot be entertained."). In fact, defendant appeared before the court again on October 18, 2023, wherein the court gave defendant multiple opportunities to make a statement in allocution before imposing a sentence. Furthermore, the court advised defendant of his right to an appeal. It was not until defendant was given the opportunity to make a statement in allocution and was advised of his appeal rights that the court imposed defendant's sentence.

¶ 21          Further, defendant's due process arguments still fail to address whether there was sufficient evidence to support the trial court's finding of contempt or whether the judge considered facts outside her personal knowledge. As we stated earlier, "Direct criminal contempt may be found and punished summarily because all elements are before the court and, therefore, come within its own immediate knowledge." *Simac*, 161 Ill. 2d at 306. "Therefore, the usual procedural-due-process safeguards are not required for a direct-criminal-contempt conviction." *People v. Hixson*, 2012 IL App (4th) 100777, ¶ 13. Accordingly, we find defendant has failed to show error.

¶ 22          Lastly, defendant argues he was "illegally incarcerate[d]" because the trial court chose to address his contempt finding on October 18, 2023, despite the dismissal of his underlying traffic cases. Defendant cites no authority for this argument. He urges this court to apply "common sense" to adjudicate his contention he was illegally incarcerated.

¶ 23       We remind defendant, this court "is entitled to have the issues clearly defined and supported by pertinent authority and cohesive arguments; it is not merely a repository into which an appellant may 'dump the burden of argument and research,' nor is it the obligation of this court to act as an advocate or seek error in the record." *U.S. Bank v. Lindsey*, 397 Ill. App. 3d 437, 459 (2009) (quoting *Obert v. Saville*, 253 Ill. App. 3d 677, 682 (1993)). We will not "research the issues on the appellant's behalf." *Gakuba v. Kurtz*, 2015 IL App (2d) 140252, ¶ 19. Likewise, we will not "formulate an argument for defendant out of whole cloth." *People v. Inman*, 2023 IL App (4th) 230864, ¶ 13.

¶ 24       Ultimately, none of defendant's arguments on appeal provide this court with reason to believe there was insufficient evidence to support the trial court's finding of contempt or that the judge had considered facts outside of her personal knowledge. On the contrary, the record shows defendant continually interrupted the court and failed to demonstrate any basic modicum of appropriate courtroom behavior. Specifically, he used vulgar and abusive language directed at the judge, which was both misogynistic and racist. Defendant's blatant misogynoir was indisputably offensive and epitomizes the kind of conduct calculated to embarrass, hinder, obstruct, and derogate the court in its administration of justice, its authority, and dignity. Consequently, we find defendant has failed to show the trial court erred.

¶ 25                                III. CONCLUSION

¶ 26       For the reasons stated, we affirm the trial court's judgment.

¶ 27       Affirmed.